## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

| | |
|---|---|
| CEDRIC BELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:19-CV-00172 JAR |
| ) | |
| RUBI LOPEZ, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Cedric Bell ("Plaintiff"), proceeding *pro se*, initially filed this action pursuant to 42 U.S.C. § 1983 against three employees at the Dunklin County Adult Detention Center ("Detention Center"), namely, Supervisor Corrections Officer Casey Clayton ("Clayton"); Corrections Officer Connor Bishop ("Bishop"); and Corrections Officer Rubi Lopez ("Lopez"), all in their individual capacities. His claim arises from an alleged incident of excessive force that occurred while a pretrial detainee at the Detention Center. According to the complaint, on September 9, 2019, Plaintiff was handcuffed in cell number 125 when Bishop rushed him into the wall and, "with evil motives," began choking him. He further alleges that instead of intervening, Clayton deployed a taser to his neck and that Lopez "place[ed] another taser to [his] leg." (Compl., Doc. No. 1 at 3). Plaintiff summarizes his injuries as "laceration to the left wrist, chest pain, and pain [sic] suffering" (id. at 5) and seeks money damages totaling $45,000.00. On August 25, 2020, the Court dismissed Plaintiff's claims against Defendants Clayton and Bishop without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. (Doc. No. 23).

Defendant Lopez moved for summary judgment on December 14, 2020. (Doc. No. 26). On January 28, 2021, this Court granted Plaintiff until March 1, 2021 to respond to Lopez's

motion and cautioned him that failure to do so would result in the Court ruling on Defendant's unopposed motion. (Doc. No. 33). Plaintiff did not respond.[1] Lopez still submitted a reply brief, reiterating her initial arguments and further arguing that her statement of the facts remained uncontroverted. (Doc. No. 34). Accordingly, the motion is unopposed and ready for disposition.

**Legal standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be granted when, viewing the facts most favorably to the nonmoving party and giving that party the benefit of all reasonable inferences, the record shows there is no genuine issue of material fact. Smith v. Kilgore, 926 F.3d 479, 483 (8th Cir. 2019). At summary judgment, the court's function is not to weigh the evidence and determine the truth of the matter itself, but to determine whether there is a genuine issue for trial. Id. There is a genuine dispute when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id.

**Discussion**

As a threshold matter, Plaintiff alleges he was a pretrial detainee at the time of the incident. Lopez asserts that Plaintiff was in fact being held at the Detention Center for alleged parole violations (in addition to new criminal charges) and, was therefore, a convicted prisoner,

---

[1] Plaintiff's status as a *pro se* prisoner does not excuse him from responding to Lopez's motion "with specific factual support for his claims to avoid summary judgment," or from complying with local rules. Beck v. Skon, 253 F.3d 330, 333 (8th Cir. 2001). With his failure to respond, Plaintiff is deemed to have admitted each fact in Lopez's Statement of Uncontroverted Facts ("SOF") (Doc. No. 28) for purposes of the pending motion for summary judgment. Turner v. Shinseki, No. 4:08-CV-1910 CAS, 2010 WL 2555114, at *2 (E.D. Mo. Jun. 22, 2010) (citing Deichmann v. Boeing Co., 36 F. Supp.2d 1166, 1168 (E.D. Mo. 1999), *aff'd* 232 F.3d 907 (8th Cir. 2000), *cert. denied*, 531 U.S. 877)). However, Plaintiff's failure to respond properly to Lopez's motion does not mean summary judgment should be automatically granted in her favor. Even if the facts Lopez alleges are not in dispute, those facts still must establish her entitlement to judgment as a matter of law. Cross v. MHM Corr. Servs., Inc., No. 4:11-CV-1544 TIA, 2014 WL 5385113, at *3 (E.D. Mo. Oct. 10, 2014).

not a pretrial detainee. (Doc. No. 27 at 6 n.5). The evidentiary record does not reveal whether, at the time of the incident, Plaintiff was a pretrial detainee or convicted prisoner. Insofar as the complaint has alleged a claim under the Fourteenth Amendment, the Court, viewing the record in the light most favorable to Plaintiff, will assume Plaintiff was a pretrial detainee.

As a pretrial detainee, Plaintiff's claim is analyzed under the Due Process Clause of the Fourteenth Amendment. Kingsley v. Hendrickson, 576 U.S. 389, 397-98 (2015); Christian v. Wagner, 623 F.3d 608, 613 (8th Cir. 2010) ("The Eighth Amendment does not apply to pretrial detainees, but the Due Process Clause of the Fourteenth Amendment imposes analogous duties on jailers to care for detainees."). "[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham v. Connor, 490 U.S. 386, 395 n.10 (1989).

The determination of excessive force is based on the facts and circumstances of each particular case. Kingsley, 576 U.S. at 397 (citing Graham, 490 U.S. at 396). It is an objective determination "from the perspective of a reasonable officer on the scene, including what the officer knew at the time …" Id. The Supreme Court has enumerated a non-exhaustive list of factors to consider, such as: the relationship between the need for force and the amount of force; the extent of injury; efforts to limit the force used; the severity of the underlying security problem; the perceived threat; and the level of active resistance. Id. Both the Supreme Court and the Eighth Circuit have reiterated the importance of appropriately managing and maintaining the security of pretrial detention facilities. See Bell v. Wolfish, 441 U.S. 520, 540 (1979) ("[T]he effective management of the detention facility … may justify imposition of conditions and restrictions … and dispel any inference that such restrictions are intended as punishment."); Villanueva v. George, 659 F.2d 851, 854 (8th Cir. 1981) ("The legitimate governmental

objectives of pretrial detention are to insure a detainee's presence at trial and to maintain security and order in its detention facilities."). See also Parrish v. Dingman, 912 F.3d 464 (8th Cir. 2019) (same).

Plaintiff's claim of excessive force against Lopez alleges that she placed a taser to his leg during the incident on September 9, 2019. Lopez contends that any force used during her interaction with Plaintiff was *de minimis* and reasonably necessary to maintain security and control given that Plaintiff was noncompliant and aggressive. Lopez further argues that Plaintiff's claim is barred by qualified immunity. In support of her motion for summary judgment, Lopez has filed a DVD containing two video recordings of the incident taken from security cameras at the Detention Center. (Doc. Nos. 28-2, -3). The Court has viewed the video recordings and agrees with Lopez's description of them.

The first recording shows Clayton and Bishop escorting Plaintiff into the booking area of the Detention Center. Lopez is the last corrections officer to walk into the booking area and the only female officer involved in the incident. At the relevant time, Plaintiff was being moved from F-Pod to cell JA125 because he was threatening to break the water pipes in F-Pod. (SOF at ¶ 4). Lopez and three other officers joined Clayton and Bishop as they escorted Plaintiff from F-Pod to cell JA125 because Plaintiff was being argumentative and acting in a threatening manner. (SOF at ¶¶ 5-6). Cell JA125 is adjacent to the booking area of the Detention Center. There is a security camera in cell JA125 to monitor the inmates placed there. (SOF at ¶¶ 8-10).

Plaintiff's hands were handcuffed in front of his body as he was escorted to cell JA125. (SOF at ¶ 7). As they approached the door of cell JA125, Clayton ordered Plaintiff to remove his headband and do-rag. (SOF at ¶ 14). For purposes of safety and security at the Detention Center, inmates are not permitted to have headbands, do-rags, or other fabric head coverings in cell

JA125. (SOF at ¶ 15). Plaintiff appeared to be stalling as he fumbled with the knot on his headband. (SOF at ¶ 16). Clayton attempted to remove the headband with his right hand, at which point Plaintiff aggressively turned and swung his right elbow and forearm towards Clayton's right arm. (SOF at ¶¶ 17-18). Plaintiff then turned to face Clayton and Bishop was able to remove the headband at that time. (SOF at ¶ 19). Plaintiff jerked his head away when Bishop tried to remove the do-rag from Plaintiff's head and removed it himself as he entered cell JA125. (SOF at ¶¶ 20, 22).

The second recording shows Plaintiff entering the cell, at which time Lopez instructed him to sit on the bench. (SOF at ¶ 23). The bench has several metal handles attached to it that can be used to handcuff an inmate to it. (SOF at ¶ 25). There was a set of handcuffs already attached to one of the handles approximately two feet from where Plaintiff was seated. (SOF at ¶ 27). Both Bishop and Clayton ordered Plaintiff to move over to the handle with the set of handcuffs attached to it, but Plaintiff refused to comply. (SOF at ¶¶ 28-31). Lopez then unlocked the handcuffs from the handle and moved them to the handle next to where Plaintiff was seated on the bench, securing one side of the handcuffs to the metal handle next to Plaintiff. (SOF at ¶¶ 32-33). Bishop removed the handcuff on Plaintiff's left hand and Lopez attempted to use the other end of the handcuff that she had locked on the bench handle to secure Plaintiff's left hand when Plaintiff resisted and began to struggle. (SOF at ¶¶ 34-36). He raised his left fist towards Lopez's head and jerked his right hand away from her. (SOF at ¶¶ 37-38).

As Bishop attempted to secure Plaintiff, they both fell to the floor of the cell. Lopez drew her Taser, but never discharged it. (SOF at ¶¶ 40-42). While Bishop, Clayton, and other corrections officers were on the floor of cell JA125 attempting to secure Plaintiff, Lopez was standing and leaning over Plaintiff's legs. (SOF at ¶ 43). The other officers were able to handcuff

5

Plaintiff and helped him to stand up and then sit down on the bench. (SOF at ¶¶ 44-46). Lopez then held Plaintiff's left arm as the other officers handcuffed him to the bench. (SOF at ¶ 48). Once Plaintiff was handcuffed to the bench, Lopez walked out of cell JA125. She had no further interaction with Plaintiff on September 9, 2019. (SOF at ¶¶ 49-50).

The video does not reflect the incident as Plaintiff alleges; instead, it clearly shows he was resistant, combative and noncompliant with the officers' directions, making it difficult for them to secure him in the cell. No force was applied until Plaintiff refused to comply with the order to move down the bench and escalated the situation by physically resisting efforts to take him there. Although Lopez drew her taser as Bishop struggled to secure Plaintiff, she did not deploy it. (SOF at ¶¶ 40-42). She never struck Plaintiff with her hands, fists, or any objects. (SOF at ¶¶ 51-52). "[W]here, as here, the nonmoving party's recitation of the facts conflicts with a video recording of the events, the court should credit the objective video over the nonmoving party's subjective version of the incident." Womack v. Bradshaw, 49 F. Supp. 3d 624, 631 (W.D. Mo. 2014), aff'd, 610 F. App'x 582 (8th Cir. 2015) (citing Scott v. Harris, 550 U.S. 372, 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Here, even taking the facts in the light most favorable to Plaintiff, the record does not reflect the use of unreasonable or excessive force by Lopez. It appears that any force used was proportional to the situation, for the specific purpose of maintaining discipline and order. If Lopez's actions resulted in some injury to Plaintiff, it is not apparent from the video. Courts in this circuit have found the use of force against a detainee was reasonable when the detainee refused to comply with an order. See Davis v. Lewis, No. 4:18-CV-01718-AGF, 2021 WL

351599, at *3 (E.D. Mo. Feb. 2, 2021) (granting summary judgment where an officer grabbed the plaintiff-detainee by his right wrist and right shoulder and forcibly walked him to his cell after he heard and refused multiple orders to return to his cell); Rushing v. Simpson, 4:08CV1338 CDP, 2009 WL 4825196, at *1 (E.D. Mo. Dec. 11, 2009) (granting summary judgment where an officer placed the plaintiff-detainee in a chokehold to remove him from the dining hall after he refused an order to return to his room); Mahamed v. Anderson, No. 07-4815 ADM/FLN, 2009 WL 873534 (D. Minn. Mar. 30, 2009) (officers used a wrist lock technique, pushed the plaintiff into a wall, and placed a knee on his back to force compliance with an order to return to his cell); Blount v. Echols, CIVIL 07-5046, 2008 WL 4368936, at *8 (W.D. Ark. Sept. 24, 2008) (officers twisted the plaintiff's arm and pushed him face-forward into a wall, pinning his head against the wall and placing a knee in his back, after he refused to comply with an order to enter his cell). In all these cases, the plaintiffs' injuries were minimal, and the courts found that the officers' actions were reasonable to maintain order. See also Cotton v. Stephens, 4:18CV3138, 2020 WL 7632216, at *7 (D. Neb. Dec. 21, 2020) (collecting cases and granting summary judgment where plaintiff detainee sustained a minor cut above the eye after a takedown).

For the same reason, Plaintiff has not established a clear violation of his constitutional rights to overcome qualified immunity. Qualified immunity shields government officers from civil damages liability except where (1) the plaintiff demonstrates the violation of a constitutional right and (2) that right was "clearly established" at the time of the official's alleged wrongdoing. Kuessner v. Wooten, 987 F.3d 752, 755 (8th Cir. 2021) (internal citations omitted).

As discussed above, the Court has found that the facts, even when viewed in the light most favorable to Plaintiff, do not establish a plausible claim for a Fourteenth Amendment

violation because Plaintiff has not shown the amount of force Lopez used was objectively unreasonable. If no constitutional violation occurred, the evaluation ends there. Crumley v. City of St. Paul, 324 F.3d 1003, 1008 (8th Cir. 2003) ("Without the requisite showing of a constitutional violation, summary judgment is proper because [plaintiff] has failed to establish the existence of an essential element of [his] case."). The Court need not proceed to the second prong of the qualified immunity analysis to determine whether the alleged constitutional violation was also clearly established at the time in question. See Kulkay, 847 F.3d at 645–46 (citing Ransom v. Grisafe, 790 F.3d 804, 812 n.4 (8th Cir. 2015)); Fields v. Abbott, 652 F.3d 886, 894 (8th Cir. 2011)). Lopez is, therefore, entitled to qualified immunity on Plaintiff's excessive force claim.

**Conclusion**

The undisputed evidence before the Court shows that Lopez's alleged conduct did not amount to a constitutional violation, and no genuine issue of material fact exists for trial. Accordingly, both under the standards for qualified immunity and on the merits, Lopez is entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Rubi Lopez's Motion for Summary Judgment [26] is **GRANTED.**

A separate Judgment will accompany this Memorandum and Order.

Dated this 30th day of April, 2021.

*/s/ John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**